**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Advanced Ambulatory Surgical Center, Inc., an Illinois Corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.  1:13-cv-07227** |
| **Cigna Healthcare of Illinois, a Delaware Corporation.** | ) ) ) | **Judge Leinenweber** |
| **Defendant.** | ) ) ) | |

**REPLY IN SUPPORT OF CGLIC'S MOTION TO DISMISS AASC'S COMPLAINT**

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois  60601
(312) 704-3000 Phone
(312) 704-3001 Fax
*Counsel for Defendant, Cigna Healthcare of Illinois, Inc.*

## INTRODUCTION

ERISA preempts AASC's state-law reimbursement claims because this case begins and ends with the interpretation and application of the ERISA plans' coverage provisions regarding cost-share obligations, and the ERISA plans' cost-share waiver protections will ultimately be the only real issue before this Court. AASC's[1] state-law reimbursement claims meet both requirements for complete preemption under *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004): AASC could have brought its claims under ERISA § 502(a), 29 U.S.C. § 1132(a), because it is an ERISA beneficiary with standing to sue as its patients' assignee. And CGLIC's conduct does not implicate a duty independent of ERISA because CGLIC acted as an ERISA fiduciary when it provided AASC with information about patients' entitlement to benefits under ERISA-regulated health plans. CGLIC's alleged statements are governed by fiduciary standards under ERISA, which provides remedies for disputes over "the interpretation of plan documents and the payment of claims." AASC's reliance on *Franciscan Skemp v. Central States Joint Board Health and Welfare Trust Fund*, 538 F.2d 594 (7th Cir. 2008), is misplaced since the provider's reimbursement claim in that case was based on a plan representative's statements about the eligibility of a person who did not have coverage under any ERISA plan.

Even if *Franciscan Skemp* were on point, conflict preemption under ERISA § 514, 29 U.S.C. § 1144, would still bar AASC's state-law claims relative to the ERISA plans. Those claims impermissibly seek to duplicate remedies in ERISA § 502(a), which are exclusive. Further, because the ultimate issue is whether the plan terms regarding fee forgiveness bar AASC's reimbursement claims, the state-law claims cannot be resolved without interpretation of

---

[1] In this brief, "AASC" refers to Advanced Ambulatory Surgical Center, Inc., "CGLIC" refers to Connecticut General Life Insurance Company, improperly sued as Cigna Healthcare of Illinois, Inc., and "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

the plans, which by itself triggers conflict preemption. AASC has not responded to CGLIC's conflict preemption argument and therefore has waived the issue.

Last, AASC has failed to make allegations that plausibly support the elements of its claims that are subject to state law (because they relate to non-ERISA plans). Reasonable reliance has not been alleged, as required for AASC's estoppel and fraud claims, because AASC knew that CGLIC reserved the right to deny its claims for fee forgiveness. AASC's § 155 claim fails because the plans that are governed by state law do not involve policies of insurance. And finally, AASC's claim for unjust enrichment fails because the parties' relationship is governed by express contracts.

## ARGUMENT

I. **ERISA Completely Preempts AASC's State-Law Claims[2] for Treating Patients Who Are Covered by ERISA-Governed Plans.**

Under the Supreme Court's decision in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), ERISA completely preempts a state-law claim if the plaintiff "could have brought his claim under ERISA §502(a)(1)(B)," and "there is no other independent legal duty that is implicated by a defendant's actions." *Aetna*, 542 U.S. at 210. When these conditions are met, a state-law claim is preempted even if: (a) it is labeled "a tort claim for tort damages," rather than a claim for benefits; (b) it seeks a "remedy beyond those authorized under ERISA § 502(a)"; and (c) "the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim." *Aetna*, 542 U.S. at 214-16. Both prongs of *Aetna* are met here.

### A. *Aetna*'s First Prong — ERISA Standing

AASC could have brought its claims under ERISA § 502(a) because it admittedly took an

_____

[2] AASC's 40 patients have coverage under 25 different plans, 22 of which are governed by ERISA, and three of which may be governed by state law. (Doc. #17-1 and cited plan documents). CGLIC's ERISA preemption arguments are addressed solely to AASC's claims for providing treatments to patients covered by ERISA plans.

assignment of its patients' benefits under their plans,[3] and the assignment makes AASC an ERISA beneficiary with standing to sue. The seminal case, *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698, 700 (7th Cir. 1991), holds that an assignment of benefits authorizes a medical provider to sue as an ERISA beneficiary. *See also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 330 (2d Cir. 2011) (provider with assignment "is the type of party that can bring a claim" under ERISA); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1992); *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 286 F.R.D. 355, 372 (N.D. Ill. 2012).[4] Thus, the first prong of *Aetna* is met.

### B.  *Aetna*'s Second Prong — Independent Duty

The second prong of Aetna — that CGLIC's alleged actions implicate no independent duty — is met for three reasons. First, AASC's claims arise from statements about benefits under ERISA-covered plans that CGLIC allegedly made while acting in its capacity as a plan fiduciary. As the plans' decisionmaker, CGLIC was an ERISA fiduciary. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 916-17 (7th Cir. 2013). CGLIC was acting in that capacity when it provided information about plan benefits to AASC. The Supreme Court has held that fiduciary acts under ERISA include "[c]onveying information about the likely future of plan benefits" and "answering beneficiaries' questions about the meaning of the terms of a plan so that those beneficiaries can more easily obtain the plan's benefits." *Varity Corp. v. Howe*, 516 U.S. 489, 502-03 (1996). Disclosing material information about a plan member's right to benefits is "at the core of a fiduciary's responsibility." *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2009) (quoting *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990)).

---

[3] *See* Plaintiff's Response, Doc. #20 at 5 of 14 ("Plaintiff directly bills its patients' insurance carrier under assignment from the patient"). An exemplar of AASC's assignments is at Doc. #1-4.

[4] Although not dispositive on this issue, it is noteworthy that Plaintiff took these assignments fully aware that its ongoing business conduct violated the terms of the health benefit plans and rendered the future submission of its claims non-covered under the plans' cost-share waiver provisions. (Doc. #1, ¶13).

Because AASC's claims arise from statements CGLIC allegedly made in its capacity as an ERISA fiduciary, CGLIC's alleged conduct does not implicate a duty independent of ERISA. *See Montefiore*, 642 F.3d at 332 (plan representatives' allegedly false representation that medical provider's patients were covered under plan was "inextricably intertwined with the interpretation of Plan coverage and benefits" and did not implicate independent duty); *Korman v. Consol. Edison Co. of New York, Inc.*, 915 F. Supp. 2d 359, 368-69 (E.D. N.Y. 2013) (insurer's statements regarding plan benefits did not implicate independent legal duty); *Gables Ins. Recovery v. United Healthcare Ins. Co.*, No. 13-21157-CIV (slip op. at 17) (S.D. Fla. Aug. 8, 2013) (Doc. #1-5) (same).

The second reason CGLIC's alleged conduct does not implicate an independent duty is that AASC's state-law claims are substantively identical to claims that AASC could assert under ERISA. The common factual predicate of AASC's claims is the allegation that CGLIC verified that its services were covered under the terms of its patients' plans, and that CGLIC failed to pay AASC's charges after it treated the patients in reliance on the benefits verifications. ERISA § 502(a) is the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987). That provision affords remedies for disputes over "the interpretation of plan documents and the payment of claims" *Biglands v. Raytheon Employee Sav. & Inv. Plan*, 801 F. Supp. 2d 781, 784 (N.D. Ind. 2011). And under ERISA, AASC could bring an estoppel claim based on CGLIC's alleged representations, *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 586 (7th Cir. 2000), a contract claim for amounts due under the terms of the plans, *Kennedy*, 924 F.2d at 700, a claim for restitution based on unjust enrichment, *Mondry*, 557 F.3d at 806, and a claim for fiduciary breach based on the alleged provision of incorrect benefits information. *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013).

4

The fact that AASC has relied on state law to bring claims that could have been asserted as ERISA claims does not allow it to avoid preemption. "[D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their ... claims." *Aetna*, 542 U.S. at 214. The focus of the duty inquiry is "on the targeted ERISA entity's *conduct*, and assessing whether the same better triggered ERISA or a different, independent legal duty." *Wurtz v. Rawlings Co., LLC*, 12-CV-1182 JFB ETB, 2013 WL 1248631, *14 (E.D. N.Y. Mar. 28, 2013). Because CGLIC's statements about and determination of benefit claims under ERISA plans forms the basis for all of AASC's claims, CGLIC's actions do not implicate an independent legal duty, and AASC's claims are substantively identical to claims under ERISA. *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1111 (9th Cir. 2011) (claim for refund of plan member's premium was identical to claim for relief under ERISA, it did not implicate independent duty, and it was therefore completely preempted even though it was brought under Montana's HIPAA statute); *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990) (state-law claim alleging employer terminated employee to prevent pension from vesting was preempted because it was identical to interference claim under ERISA § 510); *Wurtz*, 2013 WL 1248631, *14 (insurers' assertion of liens against plan members in violation of New York law did not implicate independent duty because they acted "solely on account of their expressly stated reimbursement rights" under ERISA plans).

The final reason that no independent duty is implicated is that AASC's claims cannot be resolved without determining whether under the benefit plans CGLIC properly found that the plan's fee forgiveness terms barred AASC's claims for reimbursement. Prior to making a benefits verification call, Plaintiff knew that its continued practice of cost-share waiver violated

5

the terms of the health benefit plans and rendered its claims non-covered if it persisted in that business conduct. (Doc. #1, ¶13). Because the interpretation of plan terms forms an essential part of AASC's reimbursement claims, they do not involve a legal duty independent of ERISA. *Aetna*, 542 U.S. at 211 (where plan members sought tort damages from insurers under Texas law requiring claims administrators to exercise ordinary care in making coverage decisions, insurers' conduct did not implicate duties independent of ERISA because "interpretation of respondents' benefit plans forms an essential part of [determining whether a defendant had negligently denied benefits]" and "liability would exist here only because of [defendants'] administration of ERISA regulated benefit plans"); *Jass v. Prudential Health Care Plan, Inc*., 88 F.3d 1482, 1489 (7th Cir. 1996) (ERISA completely preempted beneficiary's claim that plan nurse negligently caused her to be discharged because claim required interpretation of benefits contract). *Parkview Hosp., Inc. v. White's Residential & Family Servs., Inc.*, 1:07-CV-0208 WCL, 2008 WL 89878, *4 (N.D. Ind. Jan. 7, 2008) (hospital's contract and misrepresentation claims did not involve independent duty because ultimate question was whether provider was entitled to benefits under plan).

In sum, since both prongs of *Aetna* are met, AASC's claims are completely preempted. *Aetna*, 542 U.S. at 211; *Montefiore*, 642 F.3d at 332; *Parkview Hosp*, 2008 WL 89878, at *4.

## II. AASC's Complete Preemption Argument Is Based on Inapposite Case Law.

Although AASC opposes complete preemption based on *Oak Brook Surgical Centre, Inc. v. Aetna, Inc*., 863 F. Supp. 2d 724 (N.D. Ill. 2012), and the case *Oak Brook* relied upon, *Franciscan Skemp v. Central States Joint Board Health and Welfare Trust Fund*, 538 F.2d 594 (7th Cir. 2008), its reliance on these cases is misplaced.

*Franciscan Skemp* is distinguishable because the medical provider's estoppel claim there arose from a plan representative's statements about a person who was not eligible for coverage under any ERISA-governed benefit plan. The provider treated the patient, Romine, after the

plan's representative confirmed the plan covered her and the provider's services. But the plan then refused to pay the provider's bill because Romine had not paid her COBRA premium, resulting in retroactive cancellation of her coverage. The provider sued the plan, alleging that it was promissorily estopped to deny payment. The court found that the claim was not completely preempted because the provider "acknowledges that Romine is not actually entitled to benefits" due to the lapse in premium payments and the provider was therefore not "standing in Romine's shoes as a beneficiary seeking benefits." 538 F.3d at 598. The provider's claim could not be that of an ERISA beneficiary when all agreed that the patient was not a beneficiary. *Id*.

Several facts distinguish this case from *Franciscan Skemp*: First, AASC has standing as an ERISA beneficiary under *Kennedy*, 924 F.2d at 700, because it received an assignment of its patients' benefits under ERISA plans. There is no allegation that CGLIC denied payment of any claim because the patient was not eligible for coverage under an ERISA plan when AASC provided services. In contrast, the provider and the plan in *Franciscan Skemp* agreed that the patient was not eligible for coverage under the ERISA plan at the time of treatment. Further, since CGLIC was acting as a plan fiduciary when it made the alleged representations underlying AASC's claims, its statements were governed by ERISA's fiduciary duties. The statements of the plan representative in *Franciscan Skemp*, in contrast, were not fiduciary acts because they did not relate to a person who was eligible or had coverage under an ERISA plan.

The reason the claims in *Franciscan Skemp* escaped complete preemption is that they did not affect benefits or assets under an ERISA plan, because the patient was not eligible for coverage under any ERISA plan. Any contrary reading would enable a medical provider to expand coverage under a benefit plan based on state-law claims, which ERISA and *Aetna* do not permit. This reading of *Franciscan Skemp* is supported by the opinion's reliance on *Memorial*

*Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 246 (5th Cir. 1990), and *Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1010 (9th Cir. 1995). 538 F. 3d at 599-601. In *Memorial Hospital*, for example, complete preemption did not apply because the patient was not covered by the ERISA plan, "despite the insurance company's assurances to the contrary," and thus the "provider's subsequent civil recovery against the insurer in no way expands the rights of the patient" under the plan. Similarly, in *Meadows* the provider's claims for misrepresentation and estoppel were not expressly preempted because the patients "were not beneficiaries of any plan" at the time of treatment and the only reason the provider had a claim was that "there was no plan coverage for" the patients. 47 F.3d at 1010

Although the court in *Oak Brook*[5] read *Franciscan Skemp* to hold that a provider's estoppel claim will escape complete preemption even when the insurer's representation relates to a patient who is covered under an ERISA plan, *Oak Brook*, 863 F. Supp. 2d at 730-31, *Oak Brook* did not involve the interpretation and application of a specific plan provision – in this case, the waiver of cost-share obligations – about which the insurer had notified the provider prior to any benefits verifications calls for the disputed claims. Moreover, *Oak Brook*'s conclusion overlooks the salient differences, discussed above, between a representation about a patient who is covered under an ERISA plan and a representation about a patient who is not. An insurer's representations about the former are governed by ERISA fiduciary duties, and the provider who takes an assignment of benefits from the patient has beneficiary status under ERISA. Neither proposition holds in the case of the patient who does not have coverage under an ERISA plan. Moreover, allowing a medical provider to expand coverage under a benefit plan

---

[5] The other case AASC cites, *Rehab. Inst. of Chicago v. Grp. Administrators, Ltd.*, 844 F. Supp. 1275, 1278 (N.D. Ill. 1994), found that ERISA did not completely preempt a medical provider's claim against a plan's insurer because the provider was "not a plan beneficiary or a participant." That conclusion, however, contravenes *Kennedy*'s holding that a provider with an assignment is an ERISA beneficiary. *Kennedy*, 924 F.2d at 700-701.

based on state-law claims would thwart ERISA's goals of establishing a "uniform regulatory regime over employee benefit plans" and of "provid[ing] ready access to the Federal courts." *Korman*, 915 F. Supp. 2d at 369. Allowing such claims would also run afoul of the rule that oral modifications of ERISA plans are generally unenforceable, and allow providers to override plan terms and conditions. 29 U.S.C. § 1102(a)(1); *Orth v. Wisconsin State Employees Union Council 24*, 546 F. 3d 868, 872 (7th Cir. 2008). Finally, it would create an asymmetry at odds with the statute's goals: a medical provider with beneficiary status under ERISA could bring a state-law claim against an ERISA plan or fiduciary, but a plan member could not. Nothing in the statute suggests an intent to grant medical providers broader remedies than plan members.

In conclusion, because AASC's claims relative to the ERISA plans grow entirely out of representations and payment decisions CGLIC made while acting as an ERISA plan fiduciary, both prongs of *Aetna* are met, and AASC's claims are completely preempted by ERISA § 502(a)(1)(B), notwithstanding its reliance on *Franciscan Skemp*, which is distinguishable. *Montefiore*, 642 F.3d at 332; *Parkview Hosp.*, 2008 WL 89878, at *4; *see also Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 926 (7th Cir. 1993) (ERISA preempted claims by hospital that it was entitled to coverage and reimbursement under ERISA benefit plan).

## III.    ERISA Expressly Preempts AASC's Claims.

AASC has neglected to respond to CGLIC's argument that ERISA expressly preempts its state law claims pursuant to § 514(a), 29 U.S.C. § 1144. That provision would preclude AASC's state-law claims even if, for the sake of argument, complete preemption did not apply. *Jass*, 88 F.3d at 1487-88 (state-law claim may be "susceptible to 'conflict preemption' under § 514(a), but merely as a defense and not a basis for federal jurisdiction"); *see also Franciscan Skemp*, 538 F.2d at 601 (conflict preemption remains viable defense even if claim is not completely preempted). By failing to address conflict preemption, AASC waived the issue. *Green v. Charter*

9

*One Bank, N.A.*, 640 F.Supp.2d 998, 1005 (N.D. Ill. 2009) (failure to respond to argument "permits an inference of acquiescence and 'acquiescence operates as a waiver.'").

Although AASC has waived the issue, it is clear that conflict preemption applies to its claims. First, ERISA § 514(a) of ERISA broadly preempts "any and all State laws" that relate to "any employee benefit plan." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 640 (7th Cir. 2007). A state-law claim "relates to" an employee benefit plan for this purpose if it "has a connection with or reference to such a plan." *Spain v. Prudential Ins. Co. of Am.*, 09-CV-608JPG, 2010 WL 669866, *2 (S.D. Ill. Feb. 22, 2010); *Fresno Cmty. Hosp. & Med. Ctr. v. Souza*, CV F 07-0325 LJO SMS, 2007 WL 2120272, *5 (E.D. Cal. July 23, 2007). All of AASC's claims grow out of CGLIC's alleged statements about benefits and coverage under ERISA plans for AASC's services. Claims founded on statements about plan benefits have a "connection with or reference to" ERISA plans and are expressly preempted. *Kannapien*, 507 F.3d at 640 (express preemption of estoppel and contract claims alleging that employer induced employees to accept early retirement by overstating change-of-control and severance benefits); *Matt v. Coastal Corp. Severance Pay Plan*, 07-CV-418-BBC, 2008 WL 4646101 (W.D. Wis. Mar. 28, 2008) (ERISA preempted estoppel claim based on defendants' statement about amount of employee's disability benefits); *see also Reddinger v. SENA Severance Pay Plan*, 707 F.3d 702, 708 (7th Cir. 2013) (ERISA expressly preempted claims based on employer's alleged misstatements about employees' eligibility for severance benefits).

Second, AASC's claims are expressly preempted because they require interpretation of an ERISA plan or law. *Fresno Cmty. Hosp.*, 2007 WL 2120272 at *5. The ultimate issue is whether the plan terms regarding fee forgiveness bar AASC's reimbursement claims. Consequently, the state-law claims cannot be resolved without interpretation of the plans, which

by itself triggers conflict preemption. *See Stanford Hospital v. Hawaii Management Alliance Association*, No. C 12-05273 WHA, Slip Op. at 5 (N.D. Cal. Dec. 11, 2012) (where hospital sued ERISA plan for reimbursement based on plan's verification of member's benefits in phone call, court found that claims would be preempted by § 514 if claims required interpretation of ERISA plan terms) (attached hereto as **Exhibit 1**); *see also Fresno Cmty. Hosp.*, 2007 WL 2120272, at *6 (where hospital's contract with claims administrator provided that it was entitled to payment for services "covered under, and subject to the exclusions and limitations of the relevant" ERISA plan document, claim for payment under contract required interpretation of plan terms, and ERISA § 514 therefore preempted hospital's state-law claims for breach of contract and misrepresentation).

Third, AASC's state-law claims are expressly preempted because they duplicate and supplement the exclusive remedies under ERISA. "A suit to enforce a claim for benefits under an ERISA plan can be brought only under ERISA; parallel state law remedies are preempted." *Rud v. Liberty Life Assur. Co. of Boston*, 438 F.3d 772, 777 (7th Cir. 2006). ERISA § 514 "knocks out any effort to use state law" to assert claims based on oral representations of plan coverage. *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 127-28 (7th Cir. 1992). This is because ERISA § 502(a) is the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Pilot Life*, 481 U.S. at 52. Here, AASC has pleaded state-law theories as an independent causes of action. They "duplicate, supplement, or supplant" the exclusive ERISA remedy and are therefore expressly preempted. *See Kannapien*, 507 F.3d at 640 (estoppel claim expressly preempted); *Spain*, 2010 WL 669866, at *2-3 (contract and bad faith claims expressly preempted); *Powers v. Corn Products Int'l, Inc.*, 557 F. Supp. 2d 928, 935 (N.D. Ill. 2008) (misrepresentation claim preempted). Thus, even if

11

complete preemption did not apply, ERISA would expressly preempt AASC's claims.

## IV. The Court's Jurisdiction Is Secure Regardless of Complete Preemption.

AASC has questioned the appropriateness of removal without moving to remand. (Doc. #5). Even if complete preemption did not apply to its state-law claims, the Court would have jurisdiction because CGLIC is of diverse citizenship to AASC and the amount in controversy exceeds the jurisdictional minimum. Cigna HealthCare of Illinois, the named defendant, is fraudulently joined because it has no relationship to AASC and has had no involvement in the matters alleged by AASC. (Doc. #1 ¶¶15-16; Doc. #1-6 ¶¶3-7).

The Court would also have federal-question jurisdiction in the absence of complete preemption because, as the assignee of its patients, AASC has cognizable, even if unasserted, ERISA claims. *Kennedy,* 924 F.2d at 700. A district court may not remand a removed complaint if the defendant demonstrates the presence of a "substantial federal claim, *e.g.,* one completely preempted by ERISA." *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 528-29 (5th Cir. 2009). Likewise, *Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 926 (7th Cir. 1993), held that even if a hospital alleging promissory estoppel against an ERISA plan insurer could plead a claim that was not preempted, the lower court could exercise jurisdiction over the state-law claim and decide it on the merits. *Id.* at 927-28 ("If ERISA leaves some corner open to state law, a district court could resolve the federal claim and dismiss without prejudice, or remand" the state claim … [b]ut it need not remand…"). Thus, in no event is remand appropriate.

## V. AASC Has Not Stated Claims for Relief as to the Non-ERISA Plans.

### A. AASC's Claim for Promissory Estoppel Fails.

AASC has not stated a claim for promissory estoppel because it does not plead a definite promise, or reasonable and foreseeable reliance. *Bryant v. Jackson Nat. Life Distributors, LLC*,

12 C 9391, 2013 WL 1819927 (N.D. Ill. Apr. 30, 2013). Although AASC maintains that it has alleged an unambiguous promise by analogy to *Rehabilitation Institute of Chicago*, AASC's argument conflates an alleged statement that "coverage was available" with a promise that a facility's charges, which had not even been tabulated, would be paid. Because it has not alleged a definite promise, its claim should be rejected.

AASC cannot plead reasonable and foreseeable reliance because it was admittedly on notice no later than August 25, 2011 that CGLIC intended to deny its claims for fee forgiveness. The complaint pleads that in August 2011 CGLIC sent Illinois regulators a response that "falsely" accused AASC of fee-forgiveness to explain CGLIC's "failure to or refusal to pay [AASC's] claims." (Cplt. ¶13). Regardless of whether AASC agreed with CGLIC's allegation that it was engaged in fee forgiveness, AASC was on notice that CGLIC was denying its claims on this basis. As a result, its claims relating to any treatments rendered after August 25, 2011 cannot succeed because it was on notice that CGLIC believed it was engaging in fee forgiveness. *See Principal Mut. Life Ins. Co. v. Charter Barclay Hosp., Inc.*, 81 F.3d 53, 57-58 (7th Cir. 1996) (hospital could not reasonably rely on confirmation of coverage because it knew that plan's insurer would not be obligated to pay purported plan member's bill if it turned out that member enrolled in plan by fraudulently representing that he was employee of plan sponsor). The estoppel claim should be rejected for both reasons.

### B. AASC's Unjust-Enrichment Claim Fails.

The theory of unjust enrichment is inapplicable where an express contract governs the parties' relationship. *Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 905 (7th Cir. 2011). AASC cannot raise unjust enrichment because it took an assignment of its patients' plan benefits, and therefore "an express contract"—namely the benefit plans—governs AASC's relationship to CGLIC. *Nat'l Prod. Workers*, 665 F.3d at 905. Although AASC contends

13

that under *Franciscan Skemp* its state-law claims arise from CGLIC's statements, not the plan

terms (Doc, #20 at 8), all the parties in *Franciscan Skemp* agreed that the patient was not eligible

for coverage under her plan, while here there is no allegation by any party that any of AASC's

patients were not eligible for coverage when they underwent treatments. Second, because AASC

does not allege fraud or duress to support its claim, it has not pleaded a claim for unjust

enrichment. *Alliance Acceptance Co. v. Yale Ins. Agency*, 648 N.E.2d 971, 977 (Ill. App. 1995).

### C.    AASC's Fraud Claim Fails.

AASC cannot plead promissory fraud based on CGLIC's allegedly false promise of

payment for its services because it does not allege with particularity facts making out an alleged

scheme to defraud. *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir.

2007). At a minimum, AASC must, among other things, plead facts showing that "*at the time the*

*allegedly fraudulent statement was made,* it was an intentional misrepresentation." *Id.* AASC

cannot plead such facts. CGLIC stood to gain nothing from AASC's services because the

patients could have gone to any number of in-network ambulatory surgical centers that had

agreed to accept discounted charges for their services. The CGLIC-administered plans stood to

pay out less if the patients had gone to a center other than AASC.

The fraud claim also fails because it has not been pleaded with particularity under Rule

9(b), which requires a plaintiff to state with particularity the circumstances constituting fraud.

AASC cannot allege facts to show that that CGLIC intended its statements to induce AASC to

take some action when CGLIC and its plans would have been at least as well off if the patients

had been treated elsewhere. Further, AASC has not pleaded the circumstances of the fraud

because it does not identify the persons to whom CGLIC's alleged misrepresentations were

made. *Pendolino v. BAC Home Loans Servicing, LP*, 10 C 5916, 2011 WL 3022265, at *4 (N.D.

Ill. July 22, 2011) (fraud claim failed because plaintiff failed to allege whom the false statements

14

were made to). Last, AASC cannot plead reasonable reliance after August 25, 2011, when CGLIC "falsely" accused it of fee-forgiveness. (Cplt. ¶13). After that point, AASC knew that CGLIC intended to deny its claims for fee-forgiveness, even if AASC denied that it was engaging in that practice. For all these reasons, the fraud claim therefore fails.

### D.    AASC's Claim under 215 ILCS § 5/155 Fails.

The plans that are governed by state law (*i.e.*, those established by the State, the MPEA, and Resurrection Healthcare Corp.) are not funded by policies of insurance issued by CGLIC. (Doc. #17-18 (Ex. 18 at 5); Doc. #17-24 (Ex. 23 at 5); Doc. #17-30 (Ex. 29 at §§ 3.3.i, 4.1.g)). AASC's claim for § 155 penalties as to the non-ERISA plans fails because the claim does not involve "a policy or policies of insurance."  Thus, the § 155 claim as to the state-law plans should be dismissed with prejudice under Rule 12(b)(6). *Cf. Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 05 C 5415, 2006 WL 140544, at *3 (N.D. Ill. Jan. 13, 2006). (AASC's claim for § 155 penalties as to the insured benefit plans is preempted by ERISA. *Estate of Cencula v. John Alden Life Ins. Co.*, 174 F. Supp. 2d 794, 799 (N.D. Ill. 2001).) While AASC contends that the plan documents are outside the pleadings, the affidavit attached to its complaint states that AASC's claims are based on the plans (Doc. 1-1 at 13, ¶2). Further, plan documents may be considered on a Rule 12(b)(6) motion when the complaint relates to the plan terms. *Bolduan v. Life Ins. Co. of N. Am.,* 12-CV-1003, 2012 WL 6553807, *2 (E.D. Wis. Dec. 14, 2012). Thus, AASC's argument is unfounded, and the § 155 claim should be dismissed.

### CONCLUSION

For the above reasons, defendant respectfully submits that pursuant to Rule 12(b)(6) this Honorable Court should dismiss with prejudice plaintiff's claims for promissory estoppel, unjust enrichment, fraud, and violations of the Illinois Insurance Code.

15

Respectfully submitted:

Connecticut General Life Insurance Company, incorrectly sued as Cigna Healthcare of Illinois, Inc.


By: ___s/ Peter E. Pederson_____
One of its attorneys

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000 Phone
(312) 704-3001 Fax
dryan@hinshawlaw.com
ppederson@hinshawlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on January 27, 2014, he e-filed this document through the Court's CM/ECF system, which will cause a copy of the document to be served on counsel of record identified below.

_____s/ Peter E. Pederson_____

## Service List

Thomas J. Pliura, M.D., J.D., Esq.
P.O. Box 130
Le Roy, IL 61752
tom.pliura@zchart.com
Ph. (309) 962-2299
Fax (309) 962-4646